# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES ROOSEVELT LEE,**

**Petitioner,**

-vs-                                                    Case No.  **6:08-cv-968-Orl-31GJK**
                                                              **(6:05-cr-165-Orl-31GJK)**

**UNITED STATES OF AMERICA,**

**Respondent.**

_____

# ORDER

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by James Roosevelt Lee ("Petitioner").  (Doc. 1.)  The Government filed a response to the motion (Doc. 5), to which Petitioner filed a reply (Doc. 7).  The government admits that Petitioner's motion is timely.  (Doc. 5 at 6.)

Petitioner asserts two claims for relief.[1]  First, he claims that he received ineffective assistance of trial counsel, citing 16 alleged trial errors.  Second, he claims that the prosecutor engaged in misconduct during the trial.

## I.    PROCEDURAL HISTORY.

Petitioner and his brother, Calvin Deon Lee ("Calvin"), were charged by superceding indictment on two counts.  Specifically, the indictment charged Petitioner with one count of

_____

[1] Although Petitioner's motion includes a section titled "Ground Three -- An Evidentiary Hearing is Required," this section does not raise any arguments or seek any relief not already raised or sought in regard to the first two claims.

possession with intent to distribute five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (count one), and one count of possession with intent to distribute a quantity of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count two). (Criminal Case No. 6:05-cr-165-Orl-31GJK, Doc. 1, filed September 21, 2005).[2]  On January 11, 2006, after a two-day trial, a jury returned a guilty verdict against Petitioner and Calvin on both counts. (Doc. Cr-46).  The Court held a sentencing hearing on April 5, 2006.  (Doc. Cr-60).  The Court entered judgment on April 6, 2006, sentencing Petitioner to a 210-month term of imprisonment on each count, to run concurrently, to be followed by 8 years of supervised release. (Doc. Cr-62).  Petitioner's direct appeal was denied.  ( Doc. Cr-86).

## II.    SUMMARY OF THE EVIDENCE.

Jeffrey Duncan, a police officer with the Seminole County Sheriff's Department, testified that on May 11, 2005, as part of an undercover drug operation, he posed as a painter looking to purchase drugs.  (Tr. at 117-19, 123-24).  Duncan drove a pickup truck to a dead-end street and made contract with a woman who came out of an abandoned house and asked him what he wanted. (Tr. at 123, 126-27).  While Duncan was talking to the woman (and a man who subsequently joined her), Petitioner and Calvin drove up in a minivan and parked next to Duncan's vehicle, pointing in the opposite direction so that the two vehicles' passenger sides were adjacent.  Calvin was driving and Petitioner was in the front passenger seat.  (Tr. at 128-29).

Duncan testified that he indicated to the Lees that he was already dealing with someone else, but Calvin held up a clear baggie containing what appeared to be cocaine powder and asked

---

[2] Pleadings from the criminal dockets are cited as "Doc.  Cr [ ]," except for the trial transcript at docket numbers 75-77, which will be referred to as "Tr."

Duncan whether that was what hen was looking for. (Tr. at 130). Duncan said he then ended his discussion with the other people and turned to the Lees. (Tr. at 131).

Duncan said he told the Lees he had only $34 and showed Petitioner the money. (Tr. at 131-32). Petitioner then asked if Duncan was with the police, which Duncan denied. (Tr. at 132). Duncan testified that Petitioner and Calvin then leaned toward the middle of the van. (Tr. at 132-33). As Petitioner turned, Duncan saw a dark object in Petitioner's hand that he thought was a razor blade. (Tr. at 133). After activity in the center console area of the van, Petitioner turned back to Duncan and reached out to hand Duncan what appeared to be three pieces of crack cocaine. (Tr. at 133).

Duncan wore a wire to record his transaction with the Lees, but the resulting tape did not record the entire conversation. (Tr. at 124-25,136-38). Duncan testified that the portions of the conversation that had been picked up by the microphone had been accurately captured. (Tr. at 137-38). Duncan produced a transcript based upon what he could hear on the tape. (Tr. at 138).

After the transaction between the Lees and Duncan, Duncan called in backup officers, who attempted to stop the Lees. (Tr. at 181-84). The Lees' vehicle hit one of the police vehicles, and the brothers fled on foot. (Tr. at 184-85, 205-06). The officer who apprehended Petitioner discovered that he was carrying $2,338 in cash. (Tr. at 207, 242-43, 277). A search of the van revealed 1.4 grams of cocaine base in a clear plastic bag in the driver's-side door (Tr. at 161, 186-87) and a cell phone box on the front passenger floorboard (Tr. at 192). Inside the cell phone box were two "cookies" of cocaine base weighing 39.6 grams, a razor blade, and a clear plastic baggie containing 14.3 grams of cocaine hydrochloride powder. (Tr. at 158-62, 192-94, 195, 240-42, 244).

Calvin testified that the bag that he showed to Duncan to initiate the transaction was a bag of crack that was in his driver's side door, not the bag of powder cocaine that was found inside the cell phone box. (Tr. at 366). Calvin testified that he borrowed the car from a cousin, who had let a lot of people use it previously, including a known drug dealer. (Tr. at 364-65). Calvin testified that on the day of his arrest, he had merely been giving Petitioner a ride to and from a car-parts shop, and that Petitioner had nothing to do with the drug transaction with Officer Duncan. (Tr. 365-66, 374-76).

Petitioner testified that $2,000 of the cash found on him at the time of his arrest had been given to him that morning by a "Mr. Butler" at a car-parts shop; Petitioner had sold him, for parts, a car that he had totaled a month earlier. (Tr. at 385). Petitioner identified a document titled "repair order" as the receipt Butler gave to him when he sold his car. (Tr. at 386-88; Def. Ex. 1). Petitioner admitted that he asked Officer Duncan whether he was a cop because he wanted Calvin to "pay attention to what he was doing." (Tr. at 390-91). Petitioner testified he did not participate in the drug transaction, and that he only handed Duncan the crack because Calvin dropped one rock in Petitioner's lap while trying to pass it across to the truck. (Tr. at 392). Petitioner admitted grabbing the $34 from Duncan and passing it to his brother, who then proceeded to pull away. (Tri. 392). Petitioner denied knowing that the cell phone box was on the floorboard or touching it, and denied ever touching the razor blade in the van. (Tr. 393). Petitioner admitted that he had been convicted previously of selling cocaine. (Tr. at 401).

Task Force Agent Tom Krakosky testified he met with Calvin and his attorney on December 13, 2005. At that meeting, Krakosky testified, Calvin told him that he and Petitioner purchased approximately one-half kilogram of cocaine a week for the previous two years and

converted it into crack. (Tr. at 405-06). According to Krakosky, Calvin identified Petitioner as the "chemist" who had cooked the cocaine into crack. (Tr. at 406). At trial, Calvin denied making those statements to Krakosky. (Tr. at 379-82).

## III. GOVERNING LEGAL PRINCIPLES.

### A. Standard for Ineffective Assistance of Counsel.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992) (citation omitted).

The convicted defendant bears the burden of proving that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Thus, the petitioner must prove "by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

**B.      Standard for Prosecutorial Misconduct.**

The reversal of a conviction or a sentence is warranted when improper statements by a prosecutor have "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Classic examples of prosecutorial misconduct are: misstating facts; misstating a witness's testimony; suggesting that a witness made an out of court statement when there is no evidence of such a statement; assuming prejudicial facts not in evidence; bullying and arguing with witnesses; presenting perjured testimony; operating under a conflict of interest; and misstating the law. *See U.S. v. Williams*, 504 U.S. 36, 60-61(1992).

"Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's substantive rights. In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole

and assess their probable impact on the jury." *U.S. v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998) (internal citation and quotation marks omitted).

## IV.    ANALYSIS.

### A.    Claim One.

Petitioner alleges that his counsel was ineffective in 16 specific instances, each of which is discussed below.

#### 1.    Failure to Move to Suppress Statements Made at the Time of Arrest.

The officer who arrested Petitioner discovered more than $2,000 in cash on him.  Before being advised of his *Miranda* rights, Petitioner was asked several questions about the money by the arresting officer.  According to the arresting officer's proffered testimony, Petitioner said that he was unemployed and, when pressed about how he had come into possession of so much cash, had no response.  (Tr.  214-216).  Counsel for the Petitioner did not make a pre-trial motion to suppress the statements, based on the *Miranda* violation, and Petitioner argues that this constituted ineffective assistance of counsel.  However, Petitioner suffered no harm, as the substance of the un-Mirandized "statements" never came into evidence.

After stating that he found "a large sum of cash" when he searched the Petitioner, the arresting officer was asked whether he talked about the money with him.  (Tr.  at 207).  He answered in the affirmative, and was then asked what Petitioner told him.  (Tr.  at 207).  Petitioner's counsel immediately objected, based on the lack of *Miranda* warnings.  (Tr.  at 207).  The jury was excused, the arresting officer's testimony was proffered, and the *Miranda* issue was discussed at length.  (Tr.  at 207-217).  Eventually, the government opted to withdraw the two questions and the arresting officer's single response.  (Tr.  at 224-225).

The parties' counsel agreed that an instruction to the jury to disregard the question and answer was satisfactory. (Tr. at 225-26).

## 2. Failure to Object to the Curative Instruction.

After the government withdrew the questions and answer discussed *supra*, the parties' counsel agreed that the jury should be instructed to disregard the exchange. (Tr. at 225-26). Petitioner contends that the curative instruction given by the judge to the jury was confusing, and that his attorney should have objected to it.

"A curative instruction is effective where the improper remarks are not so highly prejudicial that they cannot be cured by an instruction." *U.S. v. Gonzalez*, 833 F.2d 1464, 1467 (11th Cir. 1987). Where the remarks by the prosecutor or judge are "so vague as to create no significant possibility that the stricken statement had a substantial impact upon the verdict of the jury," a curative statement will suffice. *Id*. (internal quotation marks omitted).

In this case, the two questions and the single answer[4] that were stricken could not have had a substantial impact on the jury's verdict. The fact that Petitioner, when arrested, had a large sum of cash on him was properly before the jury; the fact that he was asked about the money, and said something in response, was so utterly mundane that it could not possibly have swayed the jury or impacted its verdict.

---

[4]The exchange at issue consisted of the following:

Q.    "Did you talk with Mr. Lee about [the money]?"

A.    "Yes, I did."

Q.    "What did he tell you?"

In directing the jury to disregard the exchange, the Court made the following statement:

> [T]here was a question pending to which there was an objection; and after y'all left, we stayed a while and considered the matter. And the result is that the question that was posed to [the arresting officer] about the question he asked the Defendant about the cash that was found on his person, the government is withdrawing that question. And the witness's answer to that question should be disregarded by you, okay? So that resolves that issue.

(Tr. at 239). Although the Court's instructions refer only to the first question of the exchange, they were not confusing, particularly in light of the fact that this testimony did not suggest any unpleasant facts about the Petitioner or his conduct (beyond that which was already known). Petitioner has also failed to show any way in which he would have been prejudiced if the jury were confused about its obligation to disregard this trivial exchange. There, his counsel's failure to object here was not ineffective assistance.

### 3. Failure to File Severance Motion.

Petitioner next complains about his counsel's failure to move to sever his case from Calvin's. There is a preference for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Notwithstanding this preference, "[i]f it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." *Id.* at 538 (quoting Fed. R. Crim. P. 14). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The defendant bears the burden of demonstrating "that a joint trial will result in specific and compelling prejudice to the conduct of his defense. . . . A defendant can satisfy this requirement by showing that the jury was unable to sift through the evidence and make an individualized determination as to each defendant." *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (internal quotations marks and citation omitted).

Petitioner asserts that he was prejudiced by being tried jointly with his brother for four reasons: (1) because Calvin was going to take full responsibility for the conduct occurring on May 11, 2005; (2) because Petitioner was asserting a "mere presence" defense; (3) because the government gave notice that it intended to introduce Calvin's criminal record; and (4) because Calvin would have testified at Petitioner's trial.

Calvin did, in fact, testify at their joint trial, trying to take full responsibility for all the criminal conduct occurring during the May 11, 2005 drug buy. (Tr. at 365-67, 374-77, 382). Petitioner has not shown any way in which he would have been better off if the cases had been severed -- such as, for example, that Calvin would have offered additional exculpatory testimony if he had been testifying in his brother's trial rather than at a joint trial. Petitioner offers only vague suppositions that Calvin would have testified differently if such were the case.

Petitioner contends that evidence regarding Calvin would have been excluded if the cases had been severed, bolstering his "mere presence" defense.. Petitioner does not specify what specific evidence he thinks would have been excluded if the cases had been severed. Obviously, Calvin's conduct on May 11, 2005, was an integral part of the drug transaction, and evidence about him would have been admitted in Petitioner's stand-alone trial. In addition, the jury was

instructed regarding the mere presence defense. (Doc. Cr-43 at 13-14; Tr. at 423-24). The Court finds the joint trial did not impair Petitioner's mere presence defense.

Finally, Petitioner contends that had the cases been severed, evidence of Calvin's criminal record would not have been introduced at Petitioner's trial. At trial, Calvin was questioned regarding whether he had prior felony convictions, to which he responded in the affirmative. (Tr. at 372). The jury was instructed that "[e]vidence of a defendant's prior conviction of a crime is to be considered by you only in deciding whether you believe or disbelieve the witness -- the defendant as a witness, and must never be considered as evidence of guilt of the crimes for which the defendant is on trial." (Tr. at 419). If the cases had been severed and Calvin had offered his exculpatory testimony at Petitioner's trial, the evidence of Calvin's criminal record would have been elicited on cross examination.

Petitioner has failed to establish any specific prejudice resulting from failure to sever his case from Calvin's and therefore this ineffective assistance of counsel claim fails.

### 4. Failure to Disclose Defense Exhibit 1 Prior to Trial.

Defense Exhibit 1 was the "repair order" that Petitioner identified as the receipt issued to him for selling his car for parts. (Tr. at 386-88). Petitioner contends that his counsel's failure to disclose the exhibit to the government prior to trial constituted ineffective assistance of counsel. However, Petitioner has not shown that he suffered any prejudice as a result of this failure to disclose. Despite the defense counsel's failure to disclose the exhibit in advance, the government did not object to the repair order, which was admitted into evidence. (Tr. at 386-87). Petitioner complains that his counsel's failure to disclose the document pre-trial allowed the prosecutor to question its validity during closing arguments. But that misinterprets the transcript. The

prosecutor questioned the validity of the repair order/receipt because Petitioner did not have it on him the day he allegedly received it -- the day when he was arrested with a large sum of cash on his person -- but somehow it "mysteriously" showed up after the fact. (Tr. at 468).

### 5. Failure to Secure Documents Regarding Petitioner's Car Accident.

Petitioner contends that there were a number of documents available that would have established both the fact of his prior car accident and the extent of damage to his car – the vehicle he allegedly sold for parts the day of his arrest. Petitioner contends his counsel was ineffective in that he failed to investigate the availability of this evidence and present it at trial. Petitioner argues that this evidence would have made a difference as evidenced by the jury's request during their deliberations for documentation of his hospitalization or police report of the prior accident. (Tr. at 485). However, the Government did not dispute that Petitioner was previously involved in a car accident. Thus, under *Strickland*, additional documents establishing that Petitioner *was* involved in an automobile accident would not have aided his defense or altered the outcome.

### 6. Failure to Identify Prints From Cell Phone Box.

Two latent fingerprints were lifted from the cell phone box in the car at the time of Petitioner's arrest, but only one of them had enough value for comparison purposes. (Tr. at 294). The usable fingerprint did not match either Petitioner or his brother. (Tr. at 294). Petitioner contends his attorney should have identified the person responsible for the usable fingerprint and that the failure to do so constituted ineffective assistance. Petitioner offers no explanation as to how his counsel could have identified the print when law enforcement was unable to do so. In the absence of anything other than speculation as to who might have left the print, Petitioner has shown no prejudice resulting from its remaining unidentified, particularly in light of the fact that

testimony was introduced that the van used during the drug transaction did not belong to Petitioner and that the car had been driven by numerous people before Petitioner rode in it, including a known drug dealer. (Tr. at 364-65). This claim therefore fails both prongs of *Strickland*.

### 7. Failure to Identify the Vehicle's Owner.

Petitioner also complains about his counsel's failure to investigate the ownership of the vehicle driven by Calvin on the day of their arrest. However, Calvin testified that the car had been rented by his cousin, that she had lent it to him, and that it had had many prior drivers, including a drug dealer. (Tr. at 364-65). Petitioner offers nothing but speculation that uncovering the "actual" owner of the vehicle would have assisted his defense.[5]

### 8. Failure to Move for a Continuance.

Petitioner contends that counsel was ineffective because he only visited Petitioner prior to trial on three brief occasions, he did not discuss trial strategy with Petitioner, he did not comply with Petitioner's request to file a motion to suppress proffered testimony or a motion to extend time, and he did not interview witnesses that were provided to him. Petitioner does not identify the strategy that should have been pursued, the testimony that should have been suppressed (or the basis for doing so), the potential witnesses or their anticipated knowledge, or the basis for requesting an extension. Petitioner's vague contentions fail to establish that he suffered any prejudice resulting from the failure to seek a continuance.

---

[5]To the extent he contends that the jury had a question regarding the van's ownership, Petitioner misstates the record. The jury requested information about the van such as pictures and dimensions, not ownership. (Tr. at 485).

### 9.     Failure to Prepare Alternative Translation of the Tape.

Petitioner argues that his counsel should have prepared an alternate transcript of the tape recording of the drug transaction.  Petitioner does not identify any part of the Government-prepared transcript that was inaccurate.  As such, he fails to show that he was prejudiced by the lack of an alternate transcript.

### 10.     Failure to Retain Voice Identification Expert.

Petitioner argues that his counsel's failure to obtain a voice recognition/tape expert was prejudicial because Petitioner contended that his voice was not on the tape as a participant in the drug transaction.  Petitioner cites *United States v. Baynes*, 687 F.2d 659 (3d Cir. 1982), for the proposition that failure to investigate possibilities of distinguishing exemplar of defendant's voice from the voice on an intercepted tape where the intercepted tape was the only evidence against the defendant constituted ineffective assistance of counsel.

Initially, this case is distinguishable from *Baynes* in that the tape recording was not the sole evidence of statements made by Petitioner at the drug transaction.  Further, Petitioner admitted at trial that it was his voice on the audiotape asking Duncan whether he was a police officer.  (Tr. at 399).  Petitioner only denied that it was his laughter heard at one point on the audiotape.  (Tr.  at 398-99).  In his memorandum, Petitioner does not identify any other items on the transcript as being wrongly attributed to him.

There is no reasonable probability that the outcome of the case would have been different if the jury had believed that someone other than the Petitioner had laughed at one point during the drug transaction.  The Government did not argue in closing or otherwise that the laughter heard on

the tape was meaningful in any way, or that it came from the Petitioner.  Petitioner has failed to

show any prejudice from the failure to retain a voice recognition expert.

## 11.    Failure to Investigate, Interview or Subpoena Witnesses.

Similar to the arguments made above regarding documentation (Claim 5), Petitioner argues

that his counsel was ineffective because he failed to interview and present witnesses regarding the

fact of his accident, the extent of damage suffered, and the cash payment received for selling his

car for parts.   Most of the witnesses Petitioner points to would have testified regarding the facts of

his automobile accident and the damage his vehicle suffered as a result.  As stated above, the

Government never challenged Petitioner's contention that he had been in an automobile accident,

and therefore additional testimony establishing that such an accident occurred would not have

altered the outcome of this case.

Petitioner also argues that his attorney should have called "the owner/operator of A&G

Auto Repair," stating that this person could have testified "regarding the agreement to purchase

parts from [Petitioner], the date, method and amount(s) paid to [Petitioner], and the time frame

which he paid Lee within."  (Doc.  2 at 25).  Presumably, Petitioner is contending that this

unnamed owner/operator would provide a legitimate explanation for the $2,338 found on

Petitioner when he was arrested.  Given the other evidence of Petitioner's participation in the drug

transaction – his failure to object, his passing of at least one rock to the undercover agent, his

receipt of the money, etc. – the Court finds that there is no reasonable probability that testimony

from the owner/operator of A&G Auto Repair would have altered the outcome of this case.

## 12.      Failure to Object to Photograph of Currency.

Petitioner contends that his counsel rendered ineffective assistance because he did not object to Government Exhibit 13, which was a photograph of the $2,338 found on Petitioner at the time of his arrest.  Petitioner seemingly argues that because the drug transaction only involved $34 and because Petitioner contended the money on his person was from the proceeds of the sale of car parts, the money was therefore irrelevant.[6]  Petitioner's argument is without merit.

Pursuant to Rule 401 of the Federal Rules of Evidence, evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" is relevant.  The fact that Petitioner had a large sum of cash on his person at the time of his arrest was relevant to the charge of whether he possessed cocaine with the intent to distribute.  Any objection to the photograph on relevance grounds would have been overruled.  Therefore, counsel's failure to object was not an error.

## 13.      Failure to Move for a Mistrial.

Petitioner contends that his counsel should have moved for a mistrial at the time when the government introduced Exhibit 13 (the photograph of the $2,338 in currency) and when Calvin "perjured" himself.  As stated above, the photograph was relevant, and its introduction into evidence could not have provided grounds for a mistrial.  It is axiomatic that if there is no basis for objection, counsel's failure to move for a mistrial does not constitute ineffective assistance of counsel.  *See Evans v. Walker*, 242 Fed. Appx. 649, 651 (11th Cir. 2007).

---

[6] To the extent that Petitioner argues in his reply that the Court instructed the jury not to consider the money (Doc. 7 at 12), Petitioner misstates the record.  The jury was instructed to disregard the *questions* asked of the Petitioner about the money at the time of his arrest, *not* the money itself.  (Tr. at 238-39).

Petitioner has not identified the particular testimony of Calvin's that was perjured. The issue of Calvin's perjury arose after the case was submitted to the jury, and was in the context of whether Calvin's attorney had any obligations pursuant to the Rules of Professional Conduct for the Florida Bar following his client's testimony on cross-examination. (Tr. at 494-96). During Calvin's cross-examination, he denied having told Agent Krakosky, during an earlier interview, that he and his brother had been buying and selling drugs together for years. (Tr. at 379-82). (By raising the issue, the government was not itself seeking a mistrial. (Tr. at 498).) Almost immediately after the issue was raised, the jury returned with a verdict. (Tr. at 496, 499).

Petitioner has not shown that Calvin's denial of his earlier inculpatory statements about Petitioner resulted in any prejudice to Petitioner. To the extent Calvin may have perjured himself, he did so in Petitioner's favor. Moreover, Petitioner has not identified any grounds for his attorney to seek a mistrial. The Court does not find that counsel's failure to move for a mistrial based on the allegedly perjured testimony of Calvin was ineffective assistance of counsel.

### 14. Failure to Seek or Advise Petitioner Regarding a Plea Agreement.

Petitioner contends that his counsel failed to advise him of the relative merits, in terms of the effect on his sentence, of pleading guilty versus being adjudged guilty by a jury. Petitioner asserts that had he been advised of all possible consequences as it related to sentencing, he would have pled guilty under a plea agreement.

The ABA Standards for Criminal Justice 14-3.2 addresses the responsibilities of defense counsel regarding plea discussions and plea agreements. The commentary to this standard provides in relevant part:

> A defendant needs to know, for example, the probability of
> conviction in the event of trial.  Because this requires a careful
> evaluation of problems of proof and of possible defenses, few
> defendants can make this appraisal without the aid of counsel.  A
> defendant also needs to know the probable sentencing outcome of a
> plea of guilty or nolo contendere, as opposed to conviction at trial.
> Defense counsel's duty to his or her client thus encompasses a
> number of separate elements, set forth in this standard.

ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 14-3.2 (3d ed. 1999).

If Petitioner's allegations are correct, then his counsel's performance fell below an objective standard of reasonableness.  However, Petitioner has failed to establish that he was prejudiced by counsel's allegedly deficient performance.  Petitioner offers no argument or evidence as to the sentence he received compared to the sentence he would have received if he had opted to plead guilty.  The government never offered a plea agreement, so Petitioner cannot point to that as a basis for finding that his sentence would likely have been lower had he not decided to go to trial.  (Petitioner also argues that his counsel was ineffective in that he failed to solicit a plea agreement from the Government, but he offers no evidence of this nor anything other than speculation that the Government would have offered his a deal if his attorney had attempted to solicit one.)  Based on an independent review of the record in this case, including the pre-sentence report, the Court finds that it is mere speculation that the sentence would have been any less had Petitioner pleaded guilty.  Therefore, there is no basis to find ineffective assistance of counsel.

### 15.    Failure to Object to Misstatements of the Evidence.

Petitioner contends that his attorney failed to object to misstatements of evidence made by the prosecutor during opening statements and closing arguments.  Although Petitioner argues that the prosecutor made a number of misstatements, each of the alleged misstatements relate to

Petitioner's possession of a razor blade used to divide up the crack. During Duncan's testimony, the following evidence was admitted:

> Q. When James turned, did you see anything in his hand before? As he turned to the center console area, did you see anything in his hand?
>
> A. It looked like a dark object was in his hand, which I thought was a razor blade at the time.
>
> Q. So he turns to the center part of the van with what you thought was a razor blade?
>
> A. Yes, sir.

(Tr. at 133). Given this foundation, the Court finds that the prosecutor's arguments that Petitioner was wielding the razor blade (and therefore was not a "mere bystander" during the drug transaction) were not improper. Any objection to these statements by defense counsel would have been overruled. Therefore, counsel's "failure" to object to these statements did not result in any prejudice to Petitioner.

### 16. Failure to Move to Suppress the Tape Recording and Transcript.

Petitioner argues that his attorney should have moved to suppress the tape recording from Duncan's wire because it was inaudible and that counsel should have moved to suppress the transcript of that recording because it was based on Duncan's memory. However, counsel did object to the admission of the tape recording on the grounds that it was incomplete, and that objection was overruled. (Tr. at 138). Had counsel for the Petitioner made the same argument in a pre-trial motion to suppress rather than objecting to admission at trial, the same result would have occurred.

With regard to the transcript, Duncan testified that he prepared the transcript based on what could be heard on the tape, rather than relying on his memory, as Petitioner suggests. (Tr. at 138).

Petitioner does not contend that the transcript was inaccurate and does not identify any basis for his attorney to move to suppress the transcript.  Petitioner has failed to establish any prejudice from the admission of the transcript.

**B.    Claim Two.**

Petitioner argues that the prosecutor engaged in misconduct by introducing evidence of his prior conviction through Government Exhibits 16 and 17.  Exhibit 16 was a complete copy of the minutes, judgment and sentence regarding Petitioner's prior conviction.  (Tr.  at 11-12).  Exhibit 17 consisted of the first two pages of Exhibit 16 and included Petitioner's conviction and fingerprints taken on that date.  (Tr.  at 12).  Testimony was given, without objection, that Exhibit 16 was a judgment and a sentence of Petitioner.  (Tr.  at 292).[7]  Exhibit 16 never went to the jury, because Exhibit 17 was substituted for it.  (Tr.  at 331).  Trial counsel did not object to the admission of Exhibit 17.  (Tr.  at 331).

The government argues that Petitioner has procedurally defaulted as to this claim because he failed to raise the issue on direct appeal.  Petitioner replies that his attorney's failure to object at trial constituted ineffective assistance of counsel, excusing his procedural default.

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.  This rule generally applies to all claims, including constitutional claims."  *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citations omitted); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  To obtain collateral relief based on prosecutorial misconduct to

---

[7] Counsel earlier had moved to strike Exhibit 16 on the grounds that it had not been properly disclosed to the defense, but that objection was overruled.  (Tr. 6, 11).

which no contemporaneous objection was made, "a convicted defendant must show both (1) 'cause' excusing his double procedural default,[8] and (2) 'actual prejudice' resulting from the errors of which he complains." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997) (quoting *United States v. Frady*, 456 U.S. 152,167-68 (1982)). In order to establish prejudice, a defendant must show that "errors at trial worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross v. United States*, 893 F.2d 1287, 1292 (11th Cir.1990) (quoting *Frady*, 456 U.S. at 170). Unless the petitioner can establish ineffective assistance of counsel, however, the Court need not address whether he suffered the required prejudice. *Holladay v. Haley,* 209 F.3d 1243, 1256 (11th Cir. 2000).

In colloquy regarding the jury instructions, the government stated that it had introduced evidence of Petitioner's prior conviction pursuant to Fed. R. Evid. 404(b). (Tr. 359). Pursuant to Rule 404(b), evidence of other crimes is admissible to prove, *inter alia*, intent. The government argued in its closing arguments that the jury could consider Petitioner's prior conviction for sale of cocaine to determine whether he possessed the cocaine with the intent to sell in the instant case. (Tr. at 438-39). The government made clear that the jury could not convict Petitioner based on his prior conviction, but could use the prior conviction only as a "tool" to determine whether he acted with intent in this case. (Tr. at 471).

The government's introduction of evidence regarding Petitioner's prior conviction was permissible pursuant to Rule 404(b). *See, e.g., United States v. Jones*, 455 F.3d 800, 808-09 (7th Cir. 2006) (explaining that evidence of prior convictions is particularly probative where a

---

[8] Double procedural default occurs when the defendant neither objects at trial nor on direct appeal. *Reece*, 119 F. 3d at 1467 n.9.

defendant admits possession but denies intent to distribute, although it also may be introduced when he flatly denies all elements of the charge); *United States v. Chavis*, 429 F.3d 662, 668 (7th Cir. 2005) ("By portraying himself as a clueless bystander, [defendant] himself gave the prior conviction the requisite relevance to satisfy Rule 404(b)."). Therefore, there was no legitimate basis for Petitioner's counsel to object, and no ineffective assistance of counsel in his failure to do so. As a result, Petitioner's claim based on prosecutorial misconduct is barred by the failure to raise it at trial or on direct appeal.

## V. CONCLUSION.

All the claims asserted by Petitioner are without merit and must be denied with prejudice. Further, any of Petitioner's allegations not specifically addressed herein are determined to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by James Lee (Doc. 1) is **DENIED**.

2.      The case is **DISMISSED** with prejudice.

3.      The Clerk of the Court shall enter judgment accordingly and close this case.  A copy of this order and the judgment shall also be filed in criminal case number 6:05-cr-165-Orl-31GJK.

4.      The Clerk of Court is directed to terminate the § 2255 motion filed in criminal case number 6:05-cr-165-Orl-31GJK (Doc. 108).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 4, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party